Appellate Case No. <u>24-13131</u>
UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

Pamela Smothers, as Administrator for the Estate of Mitchell Wayne Smothers, Jr, deceased.

Plaintiff/Appellant,

v.

Walker County, Alabama

Defendants/Appellees.

---

On Appeal from the United States District Court for the
Northern District of Alabama, Jasper Division
The Honorable R. David Proctor

6:21-cv-01057-RDP

---

Principal Brief of Plaintiff/Appellant, Pamela Smothers

---

Charles C. Tatum, Jr., Esquire
Seth L. Diamond, Esquire
Attorneys for Pamela Smothers
Post Office Box 349
Jasper, Alabama 35502
Telephone: (205) 387-0708
Facsimile: (205)-265-2920
ctatum7@aol.com
sediamondlaw@gmail.com

**<u>CERTIFICATE OF INTERESTED PERSONS</u>**
**<u>AND CORPORATE DISCLOSURE STATEMENT</u>**

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel for Plaintiff/Appellant Pamela Smothers ("Ms. Smothers") certifies to the best of his knowledge that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have or may have an interest in the outcome of this case, including any publicly held company that owns 10% or more of a party's stock, to the best of my knowledge:

1.    Walker County, Alabama – defendant.

2.    Seth L. Diamond – plaintiff's counsel.

3.    Jamie Helen Kidd Frawley – defendant's counsel.

4.    J. Randall McNeill - defendant's counsel.

5.    R. David Proctor – trial judge.

6.    Pamela Smothers – plaintiff.

7.    Charles C. Tatum Jr - plaintiff's counsel.

8.    Charles C. Tatum Jr, PC – plaintiff's counsel's firm.

9.    Webb, McNeill, Walker PC – defendant's counsel's firm.

By:  *<u>s/Charles C. Tatum, Jr</u>*. (ASB-1703-T77C)
Charles C. Tatum, Jr, Esquire
Attorney for Pamela Smothers

i

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents important constitutional issues related to the application of the Eleventh Circuit's holding in <u>Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985),</u> and affecting the substantial rights of the plaintiff/appellant Pamela Smothers, to attain justice for her deceased son, Mitchell Wayne Smothers Jr, who died from being deprived of medical care while in the custody of the Walker County, Alabama jail.

In granting the defendant/appellee Walker County summary judgment, the district court decided that the Eleventh Circuit's decision in *Ancata* has no application in Alabama and concluded that Walker County cannot be liable for the constitutional harms caused by the policies of its contract medical provider, Preemptive Forensic Health Solutions, LLC. Under these facts, however, the district court's decision is inconsistent with this Court's ruling in *Ancata* and our Supreme Court's precedent in <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285 (1976).

Thus, this area of the law needs further clarification, and oral argument will aid the Court in developing the issues on appeal. Pamela Smothers respectfully requests oral argument, which she believes would assist the Court in its determination of these vitally important constitutional issues.

## TABLE OF CONTENTS

**Page #**

CERTIFICATE OF INTERESTED PERSONS…………………………………...i

STATEMENT REGARDING ORAL ARGUMENT……………………………..ii

TABLE OF CONTENTS…………..……………………………………………...iii

TABLE OF CITATIONS……………………………………………………….v

    I.    Cases…………………………………………………………..……..v

    II.   Statutes.……………………………………………………………..vii

STATEMENT OF JURISDICTION……………………………………...…...viii

STATEMENT OF THE ISSUES……………………………………………1

STATEMENT OF THE CASE………………………………………………2

    Course of Proceedings…………………………………………………2

    Statement of Facts………………………………………………………...5

    Standard of Review………………………………………………...15

SUMMARY OF THE ARGUMENT…………………………………………..17

ARGUMENT………………………………………………………………...19

1. *The district court misapprehended Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), and Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), when it decided, under these facts, that there was no duty for Walker County to provide inmates with access to medical care, and it could not be liable for the harms caused by the unconstitutional policies of its contract medical provider…………………………………………………………………………19*

2. *The district court erred finding the plaintiff failed to present substantial evidence that Walker County has a defacto unconstitutional policy of depriving inmates' access to medical care to save money, which caused the constitutional deprivations that led to Mr. Smothers' death. …………………………………32*

CONCLUSION……………………………………...…………………………39

CERTIFICATE OF COMPLIANCE………………………………………..39

CERTIFICATE OF SERVICE……………………………………………40

## <u>TABLE OF CITATIONS</u>

**Page #**

### <u>Cases</u>

<u>Seff v. Broward Cnty.</u>, 691 F.3d 1221, 1222-23 (11th Cir. 2012) _____ 15

<u>Allen v. Tyson Foods</u>, 121 F.3d 642, 646 (11th Cir. 1997) _____ 15

<u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700 (11th Cir. 1985) ___ 2, 4, 17, 20

<u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04, 97 S. Ct. 285, 290-91(1976) _____ 19

<u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285 (1976)_____ 2, 17

<u>FEC v. Rivera, No</u>. 22-11437, 2024 U.S. App. LEXIS 15992, at *3 (11th Cir. July
1, 2024) _____ 16

<u>Fireman's Fund Am. Ins. Co. v. Coleman</u>, 394 So. 2d 334, 349 (Ala. 1980) ____24

<u>Gilmore v. Hodges</u>, 738 F.3d 266, 274 (11th Cir. 2013)_____29

<u>Greenway v. S. Health Partners, Inc.</u>, 827 F. App'x 952, 961-62 (11th Cir. 2020) 34

<u>Greenway v. S. Health Partners, Inc.</u>, No. 20-11147-CC, 2020 U.S. App. LEXIS
34215 (11th Cir. Oct. 29, 2020) _____ 5

<u>Grochowski v. Clayton Cnty.</u>, 961 F.3d 1311, 1321 (11th Cir. 2020) _____ 18

Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 721 (11th Cir. 2019) _____ 16

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) _____ 15

Ireland v. Prummell, 53 F.4th 1274, 1289 (11th Cir. 2022). _____ 29

Jackson v. Corizon Health, No. 20-14737, 2022 U.S. App. LEXIS 3037, at *14

   (11th Cir. Feb. 2, 2022) _____ 29

Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) _____ 38

Keeton v. Fayette Cty., 558 So. 2d 884 (Ala. 1989) _____ 4, 24

Kendrick v. Jefferson Cty. Bd. of Educ., 932 F.2d 910, 912 (11th Cir. 1991) ___ 38

Meditation Ass'n of Ala., Inc. v. City of Mobile, 83 F.4th 922, 926 (11th Cir. 2023)

   _____ 15

S. Atl. Cos., Ltd. Liab. Co. v. Sch. Bd. of Orange Cty., 699 F. App'x 842, 846

   (11th Cir. 2017) _____ 30

Saintfleur v. Warden, Everglades Corr. Inst., No. 17-12851-K, 2018 U.S. App.

   LEXIS 34575, at *8-9 (11th Cir. Dec. 7, 2018). _____ 28

Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 839 (11th Cir. 2017) _____ 37

Trezevant v. Tampa, 741 F.2d 336, 340 (11th Cir. 1984) _____ 33

Turquitt v. Jefferson Cty., 137 F.3d 1285 (11th Cir. 1998)_____26

Williams v. Limestone Cnty. 198 F. App'x 893 (11th Cir 2006)_____25

**Statutes**

28 U.S.C. § 1292(a)(1) _____7

28 U.S.C. § 1331_____6

42 U.S.C. §1983 _____ 6

Alabama Code *§14-6-19* _____23

Fla.Stat.Ann. Sec. 951.032 _____21

## STATEMENT OF JURISDICTION

On August 2, 2021, Pamela Smothers, in her representative capacity as Administrator for her deceased son Mitchell Wayne Smothers, Jr. (hereinafter "Ms. Smothers"), initiated this action by bringing claims for violations of her rights under state common law and the U.S. Constitutional under 42 U.S.C. §1983 against Roger Childers, Preemptive Forensic Health Solutions, and Walker County Alabama [ECF doc. #1 pp. 1 - 32[1] and ECF doc. #3 pp. 1-39].  The district court had jurisdiction of this matter under 28 U. S. C. §§1331 and 1343.

On July 10, 2024, the district court entered a pro-tanto order dismissing with prejudice the medical defendants, Roger Childers and Preemptive Forensic Health Solutions, LLC [ECF doc. #90 p. 1].

On September 18, 2024, the district court entered summary judgment, dismissing Ms. Smothers' claims against Walker County, Alabama, with prejudice. [ECF doc. #92 p. 1].  On September 25, 2024, Ms. Smothers timely filed her notice of appeal.  This Court has jurisdiction, under 28 U.S.C. § 1292(a)(1), to consider the appeal of the district court's order granting summary judgment.

---

[1] References to the record utilize the CM/ECF document and page number printed in blue at the top of page of each filed document.

## <u>STATEMENT OF THE ISSUES</u>

This appeal presents the following distinct issues of constitutional law:

1.      Whether the district court misapprehended <u>Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985),</u> and <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285 (1976), when it decided, under these facts, that there was no duty for Walker County to provide inmates with access to medical care, and thus it could not be liable for the harms caused by the unconstitutional policies of its contract medical provider.

2.      Whether the district court erred finding the plaintiff failed to present substantial evidence that Walker County has a *defacto* unconstitutional policy of depriving inmates with access to medical care to save money, which caused the constitutional deprivations that led to Mr. Smothers' death.

## STATEMENT OF THE CASE

### I.    COURSE OF THE PROCEEDINGS

On August 2, 2021, Pamela Smothers filed her original complaint against defendants Roger Childers, RN, (hereinafter "Childers"), his company, Preemptive Forensic Health Solutions LLC, (hereinafter the "PFHS"), and Walker County, under 42 U.S.C. §1983, for having deprived her son, Mitchell Wayne Smothers, Jr, of his constitutional rights, to be free from cruel and unusual punishment, under the 8th and 14th Amendments to the U.S. Constitution, for having denied him access to necessary and adequate medical care in the Walker County Jail, which lead to his death. [ECF doc. #1 pp. 1-32].

Two days later, on August 4, 2021, Ms. Smothers filed an amended complaint in which she restated her federal claims and added state common law, negligence, claims against the medical defendants for wrongfully causing his death. [ECF doc. #3 pp. 1-39].

In her amended complaint, Ms. Smothers' sole claim against Walker County was encompassed under Count III – § 1983 Failure to Fund, which is the subject of this appeal. Ms. Smothers alleged that Walker County has a constitutionally mandated duty to provide inmates with necessary and adequate medical care, at its expense. [*Id.* at p. 30]. However, to minimize costs, Walker County had a *defacto* policy or custom of contracting with Preemptive Forensic Solutions LLC (PFHS), the least expensive provider, to save money. [*Id.*].  Further, Walker County was

deliberately indifferent in that it had subjective knowledge PFHS was depriving inmates' access to medical care for their serious medical needs, but purposefully continued the contract to avoid having to pay more money.  In doing so, this policy or custom violated Mitchell Smothers' constitutional rights and lead to his untimely death. [*Id.* at p. 31].

On August 26, 2021, Walker County filed a pre-answer motion [ECF doc. #7 pp. 1-3] and brief [ECF doc. #8 pp. 1-8] to dismiss with prejudice Ms. Smothers' claim. In its motion and brief, Walker County contended it had no duty to provide inmates with access to medical care and that it cannot be liable for the medical defendants' misdeeds. [ECF doc. #8 at pp. 4-6].  On September 17, 2021, Ms. Smothers filed her responsive brief, [ECF doc. #17 pp. 1-16], in which she argued that (1) Walker County has both a constitutional and a common law duty to provide inmates with medical care and is liable for the unconstitutional policies of its medical provider [*Id.* at 5-9], and further that (2) Walker County is liable for its own policies and customs that resulted in the deprivations of Mitchell Smothers' constitutional rights and his injuries. [*Id.* at 10-14].

On November 3, 2021, the district court entered its memorandum opinion, [ECF doc. #22 pp. 1-5] and order denying Walker County's motion to dismiss [ECF doc. # 21 p. 1]. The district court reasoned Ms. Smothers had plausibly stated a claim because Walker County has a duty to adequately provide funds for medical care and

is liable for the harms caused by its own unconstitutional policies and customs. [ECF doc. #22 pp. 3-5].

On April 15, and 16, 2024, Walker County filed a motion and brief for summary judgment. [ECF doc. # 70 pp. 1-3 and doc. # 77 pp. 1-14, respectively]. Similarly, on April 16, 2024, the medical defendants also moved for summary judgment. [ECF doc. # 71 pp. 1-3, doc. #75 pp. 1-30, doc. # 78 pp. 1-3, and doc. # 79 pp. 1-20]. However, by joint stipulation between the plaintiff and the medical defendants, an order for pro-tanto dismissal with prejudice was entered on July 11, 2024, [ECF doc. # 90 p.1], leaving only Ms. Smothers' claim against Walker. County.

In its motion for summary judgment, Walker County contended that it had no duty to provide inmates with access to medical care, but rather, its obligation was limited to merely writing a check and that it could not be deliberately indifferent because it had fulfilled its duty by paying for a third-party contract provider. [ECF doc. #77 pp. 9-11]. On May 6, 2024, Ms. Smothers filed her brief in opposition. [ECF doc. #82 pp. 1-22]. Smothers' countered that Walker County had a constitutional duty to provide inmates with access to medical care, under Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), [ECF doc. 82 pp. 10-16], and, under these facts, it had also voluntarily assumed a duty, under Keeton v. Fayette Cty., 558 So. 2d 884 (Ala. 1989), [Id. at p. 17], and thus was liable for the

4

unconstitutional policies of its contract providers.  Further, Ms. Smothers argued that Walker County was liable for its own unconstitutional policies and customs which resulted in harm to her son.  (See Greenway v. S. Health Partners, Inc., No. 20-11147-CC, 2020 U.S. App. LEXIS 34215 (11th Cir. Oct. 29, 2020)). [ECF. doc. # 82 at pp. 17-20].

On September 18, 2024, the district court entered its memorandum opinion [ECF doc. # 91 pp. 1-21] and summary judgment, dismissing Ms. Smothers' claims against Walker County, Alabama, with prejudice. [ECF doc. #92 p. 1].  The district court reasoned that Smothers had failed to present substantial evidence that Walker County was deliberately indifferent to inmates' serious medical needs to save money [ECF doc. #91 pp. 14-15].  Further the district court ruled that this Court's holding in *Ancata* was unique to Florida, due to its legislative enactments, and unlike Florida, local governments in the State of Alabama, and specifically Walker County, had no constitutional duty to provide inmates with access to medical care. [*Id.* at pp. 16-17].

On September 25, 2024, Ms. Smothers filed her timely notice of appeal. [ECF doc. #94].

II.   STATEMENT OF THE FACTS

   A. *Mitchell Smothers, Deceased*

On July 27, 2017, Mitchel Wayne Smothers Jr, deceased, (hereinafter Mitchell Smothers), plead guilty to a reduced charge of Possession of a Forged

Instrument in the 4th degree, a misdemeanor, and was sentenced to serve (6) months, of a twelve (12) month sentence, in work release, followed by 12 months of supervised probation by Community Court Referral. [ECF doc.# 81-1 p. 2 ¶3]. On February 12, 2019, he was arrested for failing to report to his probation officer, [ECF doc. #81-1 p. 4], and was booked into the Walker County Jail. [ECF doc. #81-3 p. 121]. On March 18, 2019, The Circuit Court of Walker County, Alabama ordered that Mitchell Smothers was to serve the balance of his 12-month sentence in the Walker County Jail. [ECF doc. #81-1 p. 5 - 6].

At the time of his booking, Mitchell Smothers was forty-nine (49) years old and had serious medical needs. [ECF doc. #81-3 pp 15, 19, 123]. He had recently been discharged from a local hospital and was under a doctor's care for an open wound to his lower left leg infected with MRSA[2]; he had also been receiving home health nursing care which included oral antibiotic administration and wound

---

[2]

ECF doc. #70-16 p. 136, image of wound dated 1/25/19.

**Photos**



dressing changes. [*Id.* and ECF doc. #81-2 p. 47]. Further at his booking, since this was his 12th or 13th admission, [ECF doc. #72-9 p. 2], it was known by the medical defendants that Mitchell Smothers had serious chronic health conditions, which included venous insufficiency, recurrent cellulitis, liver disease from advanced Hepatitis-C, COPD, and non-healing wounds to his lower extremities. [ECF doc. #81-2 p. 57; ECF doc. #76 p. 6 ¶22].

During the time of Mitchell Smother's incarceration, medical services were provided by Walker County's Contract provider, Preemptive Forensic Health Solutions, LLC (PFHS), which is a single member company owned and operated by Roger Childers, a registered nurse (RN) with a doctorate in business administration (PhD). [ECF doc. #81-2 pp. 6-7]. Childers was the responsible health authority who acted on behalf of PFHS and was responsible for its overall operation, including to ensure it met its obligations under the contract with Walker County, as well as, hiring staff, monitoring inmate access to health care, scheduling nurses, and coordinating the operation of an on-site health clinic. [ECF doc.# 81-9 pp. 12-13].

Despite not being a medical doctor, Childers and his staff would refer to him as "Dr. Childers", especially in front of inmates. [ECF doc. #81-2 p. 38]. To be called a "doctor" in a medical setting, when you are not a physician is misleading to the patient and can contribute to a lack of proper care. [ECF doc. #70-16 pp. 21-22].

At his booking his booking, on February 12, 2019, Mitchell Smothers was

assessed by PFHS' director of nursing Amanda Getter Mize (hereinafter Mize) who determined, that due to his serious medical conditions, Smothers needed to be seen by a doctor and placed his name on the doctor's list. [ECF doc. # 81-3 pp. 51-53]. Childers, however, was responsible for maintaining the doctor's list and making sure inmates on the list were seen, [ECF doc. # 81-3 pp. 24-25, and 52]. Childers, who was also personally familiar with Mitchell Smothers, [ECF doc. # 81-2 pp. 9 and 26], reviewed the booking assessment performed by Mize but never scheduled Mitchell Smothers to be seen by a physician. [ECF doc. #81-9 pp. 36-37 and pp. 95-96].

Instead, Childers decided to manage Mitchell Smothers' care himself. Even though PFHS had no medically approved written standardized procedure for wound care, despite being required to by Alabama Board of Nursing, [ECF doc. #81-3 p. 61], on February 14th and the 16th of 2019, Mize changed Mitchell Smothers' bandages to his lower left leg and discontinued all wound care in the absence of any medically approved written standardized procedure or any doctor's instructions. [ECF doc. # 81-3 pp. 61-62, and 128].

On February 20, 2019, without Smother's having seen a doctor, Childers medically released Mitchell Smothers from an observation cell in the booking area to general housing. [ECF doc. #81-9 pp. 53-55]. Afterwards, Mitchell Smothers' health began to decline. On May 7, 2019, because of his poor health, PFHS nursing

staff decided he needed to be moved back to booking for medical observation. However, during the time Mitchell Smothers was there, he was never assessed by nursing staff, other than taking his vital signs, or seen by a doctor, and on May 9, 2019, Childers decided that Mitchell Smothers was to be returned to his assigned housing unit. [ECF doc. #81-9 pp. 56-60].

To treat Mitchell Smother's retention of fluid, swelling, and open sores on his legs, on June 1, 2019, PFHS diagnosed that Mitchell Smothers was to be given Lasix (a diuretic), without ever having been seen or evaluated by a doctor and without having obtained a valid doctor's prescription. [ECF doc. # 81-2 p. 49; ECF doc. # 81-3 pp. 68-69, 130-132; ECF doc. # 81-9 pgs. 70-79; ECF doc. #81-4 pp. 2-3; ECF doc. # 81-5 pgs. 2-3]. Instead, it was the widespread practice of PFHS for Childers to medically diagnose patients, [ECF doc. #72-14 pp. 2, 6], and for nurses to routinely order prescription medications from a local pharmacy under a prescriber's name and DEA number, Dr. Ajmal Khan – a psychiatrist, even though Dr. Khan had never seen these patients or authorized their medications. [ECF doc. #81-3 pgs. 70-71, ECF doc. #81-6 pp. 2-5, 7-16]. The dose of Lasix administered to Mitchell Smothers, however, was insufficient, too low, and negatively affected his health, which a licensed medical provider would have known. [ECF doc. #81-7 pp. 76-77].

On June 24, 2019, Childers instructed the jail administrator, Jottie Tidwell, to make a request of the Alabama Department of Corrections to transfer Mitchell

Smothers into their custody "ASAP" because he was a "high medical risk at the Walker County Jail". [ECF doc. #70-3 p. 20, 58].  As Mitchell Smothers' health declined further, his fellow inmates observed that his legs were severely swollen, oozing fluid, that he was in excruciating pain, having difficulty walking, and that he had reported he was passing blood in his urine. [ECF doc. #72-15 pp. 59-61; ECF doc. #72-14 pp. 2, 6].  On June 29, 2019, Childers went to speak with Mitchell Smothers and told him he needed to be sure to take his medication, but he never did a nursing assessment or had him seen by a doctor. [ECF doc.#81-2 p. 44].

On August 2, 2019, Walker County jailers on duty had Mitchell Smothers transferred to Walker Baptist Hospital because of the swelling and open sores on his legs, and he was having difficulty breathing[3]. [ECF doc. #81-3 p. 134]. He was admitted to the hospital and diagnosed with acute metabolic encephalopathy, septic



[3] ECF doc. #70-16 p. 131 image of wound dated 08/02/19.



shock secondary to cellulitis, a urinary tract infection, and hepatorenal syndrome. [ECF doc. #70-16 p. 31; ECF doc. #81-8 pp. 3, 5].  His health failed to improve, and on August 12, 2019, Smothers died from multisystem organ failure caused by the lack of medical care he received at the jail. [ECF doc. # 70-16 pp. 52-53; *Id.* at pp. 131-134].

B. *Walker County*

From 2009 through 2021, Walker County contracted continuously with PFHS to provide comprehensive medical services at the jail to reduce its cost of inmate medical care. [ECF doc. # 70-1 p. 9-13, p. 18].  Pursuant to the terms of the contract, for a fixed price, PFHS was obligated to provide county inmates with basic and adequate medical care, treatments, and services seven days a week, twenty-four hours per day. [ECF doc. #70-9 pp. 2, 6].  On site medical services included medication administration, a formal health clinic at least one day per week with a doctor or nurse practitioner, on call medical services, and two registered nurses on-site seven days a week during defined hours who determined whether inmates were allowed to be seen by a doctor, whether at the jail or by an outside medical provider. [*Id.* at p. 3, 4].

To further minimize cost to the County, under the contract, it was PFHS' obligation to pay for a doctor or nurse practitioner to operate a medical clinic [ECF doc. # 70-1 pp. 12; ECF doc. #70-9 at ¶6], and, at no additional charge to the county,

11

PFHS was to increase on-site medical services to include wound management services, suturing, and ordering and stocking medications. [*Id.* at p. 5]. All other medical expenses incurred, not covered by the contract, were directly borne by the County. [*Id.* at p. 6].

Childers took pride in the amount of money he was saving the County, [ECF doc. # 81-2 p. 67]. On September 15, 2015, he sent the County Commissioner a letter highlighting his accomplishments that since hiring of his company, he had saved the County at least $700,000 in pharmaceutical costs and saved the County from incurring outside medical expenses by sending less than 12 inmates to the hospital, whereas in 2009 there were 33 hospital visits alone. [ECF doc. #70-7 pp. 2-3].

To the exclusion of the Sheriff, only the County could enforce or cancel the contract "if in the *County's sole discretion*" Roger Childers or PFHS was "not in compliance", but only upon 60 days prior written notice of the specific non-compliance or deficiency. [ECF doc. #70-1 pp. 12-13, 20; ECF doc. #70-7 p. 7 at ¶10; ECF doc. 70-2 pp. 47-48]. The County took no action to cancel or enforce the contract despite knowing that Childers and PFHS were not fulfilling its contractual obligations and was providing inmates with substandard care. [ECF doc. #70-1 p. 14].

On July 22, 2016, before the most recent contract with PFHS was renewed by

the County, the County Administrator contacted Childers by email asking him to identify who was the physician PFHS was using and how frequently he or she was coming to the jail. Childers responded Dr. Ajmal Khan, a psychiatrist, and or a nurse practitioner were coming to the jail once a month, [ECF doc. # 70-1 pp. 29 and 97]. Even though under the contract, the County required that a doctor or nurse practitioner conduct a clinic, at least, once per week, on September 6, 2016, the County renewed the agreement, despite having knowledge of its non-compliance. [ECF doc. # 70-1 p. 24-25, 96].

Walker County Sheriff, Nick Smith, was first elected in 2018 and took office in January of 2019. [ECF doc. #70-2 p. 27].  During his campaign, Sheriff Smith was aware of the inadequate medical services being provided at the jail by Childers and PFHS, particularly that Childers was not a medical doctor, and a number of inmates had died under his care.  [*Id.* at pp. 46-47].  In fact, in the four years preceding Sheriff Smith having taken office, nine (9) inmates had died at the jail due to Childers and PFHS having deprived inmates from being treated by a medical doctor. [*Id.* at p. 56].

Furthermore, when Sheriff Smith took office in January of 2019, he personally informed the County that Childers and PFHS were not staffing the jail with registered nurses, as was required by the contract, but instead were using CNA's (nurses' assistants). [ECF doc. #70-1 p. 27].  Moreso, the County was also aware

13

through prior lawsuits that inmates had died or suffered injury in the jail and had complained it was due to a lack of medical care provided by Childers and PFHS. [*Id.*].  In spite of Walker County knowing about the inadequate and substandard medical care, and non-compliance with the contract, when the 2016 contract expired on September 30, 2018, Walker County kept Childers and PFHS at the jail on a month to month to basis. (*Id.* at pp. 32-33, p. 95).

In the months leading up to Smothers' death, when another inmate, Mindy Tidwell, died due to inadequate health care, Sheriff Smith discussed his concerns about Childers and PFHS with County Chairman Jerry Bishop. [*Id.* at pp. 48 – 49]. Smith told Bishop his primary concern was that inmates were not being allowed to be seen by a real doctor. [*Id.* at p. 49]. Because of this, Sheriff Smith implemented a policy change that if any inmate was sick, or even so much as stubbed their toe, Childers was to notify him and that the inmate was to be taken to an outside hospital, rather than to be treated by Childers and PFHS.  [ECF doc. #70-2 pp. 18, 48].  As a result of this policy change, Walker County's expenses for inmate medical care nearly doubled. [*Id.* at 70-2 p. 50].  In turn, the County questioned Smith why the jail's medical expenditures were so high and told him that if it continued, they would have to make cuts in other areas of his budget. [*Id.* at 48].  Despite the Sheriff's directives, Childers never informed Sheriff Smith about Mitchell Smothers until August 3, 2019, after he had been admitted to the hospital. [*Id.* at p. 52].

14

Sheriff Smith also asked the County to solicit bids to change medical providers to get rid of PFHS because he could not do so himself. [ECF doc. #70-1 pp. 24, 33]. When the County finally did, Childers began flooding the Commission Office with letters of recommendation of him and his company.  Chairman Bishop then told Sheriff Smith that since he was up for re-election any decision on replacing Childers would have to wait until after the election.  [ECF doc. #70-2 pp. 57 – 58]. Although Sheriff Smith first expressed his concerns about Childers and PFHS to the County in 2019, the County did nothing to change medical providers until two years later. [ECF doc.# 70-1 p. 28].

III.    STANDARD OF REVIEW

On appeal "the district court's grant or denial of summary judgment [is reviewed] de novo, applying the same legal standard as the district court. *Seff v. Broward Cnty.*, 691 F.3d 1221, 1222-23 (11th Cir. 2012). Summary judgment is proper where, construing all facts in favor of the non-movant, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1223." Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, 83 F.4th 922, 926 (11th Cir. 2023). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)). [C]redibility determinations, the weighing of

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)."<u>FEC v. Rivera, No</u>. 22-11437, 2024 U.S. App. LEXIS 15992, at *3 (11th Cir. July 1, 2024). "Summary judgment is improper, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)." <u>Guevara v. NCL (Bahamas) Ltd</u>., 920 F.3d 710, 721 (11th Cir. 2019).

## SUMMARY OF ARGUMENT

Simply stated, as to the first issue, under the facts of this case the district court erred finding that Walker County had no duty to provide inmates with access to necessary and adequate medical care.

Firstly, the district court disregarded Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), holding that a governmental body has a constitutional duty, independent of state law, to provide inmates with access to medical care.

Secondly, the district court misapprehended Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), when it determined, unlike Florida state law, there was no statutory duty in Alabama for County governments to provide inmates with access to medical care. Notwithstanding, on their face, both applicable statutes *only* require that counties pay for medical care. Thus, these statutes are substantially similar and, as this court noted in *Ancata,* implicit with the county's obligation to pay for medical services is a duty to provide medical services because inmates are not in a position to bargain for same. *Ancata* at n.9.

Thirdly, the district court disregarded, under the common law, that Walker County had voluntarily assumed a duty to provide necessary and adequate medical care when it entered into an exclusive contract with PFHS, which mandated that no entity or person other than Walker County – at its "sole discretion", could enforce or cancel the contract. Therefore, Walker County had a duty to monitor PFHS to

ensure it was compliant with the terms of contract and to take corrective action when it had knowledge inmates were dying because PFHS was withholding access to a doctor's care.

Thus, Walker County cannot escape liability under §1983 because the overwhelming evidence establishes that Mitchell Smothers' death was caused by the policies of its medical contract provider, PFHS, to withhold medical care to save the county money.

As to the second issue, the district court erred finding Ms. Smothers failed to present substantial evidence that Walker County had a *defacto* unconstitutional policy of depriving inmates' access to medical care to save money. It is well established law that "[a] county is liable under §1983 if one of its customs, practices, or policies was the moving force behind a constitutional injury." *Grochowski v. Clayton Cnty.*, 961 F.3d 1311, 1321 (11th Cir. 2020). Yet, the district court overlooked substantial evidence in the record which created a genuine issue of material fact that despite knowing inmates were dying because PFHS was not complying with the terms of the contract and was depriving inmates access to a doctor's care, which caused Mitchel Smothers' untimely death, Walker County took no action to enforce or cancel the contract with PFHS to save money.

# **ARGUMENT**

**1.      The district court misapprehended** Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985), **and** Estelle v. Gamble, **429 U.S. 97, 97 S. Ct. 285 (1976), when it decided, under these facts, that there was no duty for Walker County to provide inmates with access to medical care, and it could not be liable for the harms caused by the unconstitutional policies of its contract medical provider.**

A. _The district court misapprehended controlling law._

It is beyond cavil in Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S. Ct. 285, 290-91(1976), the US Supreme Court established that under the 8th Amendment the government has a constitutional duty to provide inmates with medical care, where it opined as follows:

"[T]he [8[th]] Amendment proscribes more than physically barbarous punishments. See, *e.g., Gregg* v. *Georgia, supra,* at       171       (joint opinion); *Trop* v. *Dulles,* 356 U.S. 86, 100-101 (1958); *Weems* v. *United States,* 217 U.S. 349, 373 (1910). The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency…," *Jackson* v. *Bishop,* 404 F. 2d 571, 579 (CA8 1968), against which we must evaluate penal measures. . . .*These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," In re Kemmler*, supra, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. *Gregg v. Georgia*, supra, at  182-183  (joint opinion). .  . .*We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain*," *Gregg v. Georgia*, supra, at 173 (joint opinion), proscribed by the Eighth Amendment. . . . *Regardless of how evidenced, deliberate indifference*

19

*to a prisoner's serious illness or injury states a cause of action under § 1983*." (emphasis added in italics). (emphasis italicized). <u>Estelle v. Gamble,</u> 429 U.S. 97, 102-05, 97 S. Ct. 285, 290-91 (1976).

In <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700 (11th Cir. 1985), this Court embraced the Supreme Court's ruling in *Estelle* and opined that County governments are liable for the unconstitutional policies of third-party contract medical providers. "The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. *See Estelle, supra*. This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable. Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." *Id.* at 705.

In that case, Ancata's heirs sued Broward County, Florida, among others, for having violated his 8th Amendment right by denying him access to adequate medical care for treatment of his nascent leukemia, which lead to his untimely death. *Id.* at 701-02. The district court, however, dismissed Ancata's claim finding it was "rooted in notions of *respondeat superior"* because under Florida state law the County's role was limited to solely funding the jail and not running the jail. *Id.* at 702.

20

In reversing the district court's decision, the *Ancata* court noted that, "[t]he allegations in this case are different in that the plaintiff alleges that the actions and policies of the county and the sheriff's office did affect in various ways the health care received by Mr. Ancata. The actions are not solely based upon their status as a public body." *Id.* at n.6.  Ultimately, this court found that Broward county's duty to provide medical care was twofold; firstly, there was a constitutional duty, under *Estelle,* and secondly there was an implicit duty under Florida state law. (*See Ancata* at n.9, "The county has a duty to provide adequate medical care both under the United States Constitution and under Florida law.").

As to the state law duty, the *Ancata* court reflected on Florida's Statute § 951.032, which merely obligated the county to pay for inmate medical expenses and allowed it to seek reimbursement from the prisoner or their health insurer. "Fla.Stat.Ann. Sec. 951.032 states in pertinent part: (1) A county detention facility or municipal detention facility incurring expenses for providing medical care, treatment, hospitalization, or transportation may seek reimbursement for the expenses incurred in the following order: (a) From the prisoner or person receiving medical care, . . . (b) From an insurance company, health care corporation, or other source if the prisoner or person is covered . . .for those expenses." (*Id.* at n.7).

The *Ancata* court ruled that concomitant with county's obligation to pay for medical care was a duty to provide medical services because a prisoner is not in a

position to bargain for services in jail. "Although the statute makes clear that the county can seek reimbursement from a person incarcerated, the plain wording of the statute indicates that the county has the responsibility for securing adequate medical treatment. A prisoner does not have to bargain for medical care. The county admits as much in its brief; "state law mandates that Broward County pay the medical expenses of prisoners incarcerated in the county jail." *Id.*

In the present matter, like the district court's decision in *Ancata*, the trial court similarly found that Walker County's duty was solely limited to funding the jail and thus could not be liable for its contract provider's, PFHS's, unconstitutional policies[4]. More so, the trial court found that since Walker County had entered into a contract to provide medical services, and it had paid for medical expenses outside of the contract, that the County had fulfilled its obligations. Hence, Smothers had no claim against the county for "subpar medical services", which was "essentially a non-viable *respondeat-superior* claim. [ECF doc. #91 at. 20].

The district court's logic is fundamentally flawed.

---

[4] PFHS' custom or policy to deny inmates access to see a medical doctor to save money becomes the official policy of the County because state action is present. "Where a function which is traditionally the exclusive prerogative of the state (or here, county) is performed by a private entity, state action is present. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974);"Ancata at 703. "Prison Health Services and/or its employees have the responsibility to make final decisions regarding a requirement that a prisoner pay for medical attention before receiving it or obtain a court order, then their acts, policies and customs become [the county's] official policy." *Id.* n.9.

Firstly, the district court disregarded Walker County's constitutional duty, under *Estelle,* to provide inmates with medical care, which is independent of any state law obligation.

Secondly, the district court misconstrued Alabama statutes as being "**substantially different**" from Florida's, regarding the provision of inmate medical care, which notably on their face are significantly *similar.* Indeed, both statutes only require the county to pay for medical care.  Not unlike *Florida's Statute 951.032, Alabama Code §14-6-19* states in relevant part, "[t]he sheriff of a county shall provide to prisoners **at the expense of the county**, all of the following: . . . (2) Necessary medicine and medical attention to those prisoners who are sick or injured, when they are unable to provide them for themselves." (emphasis provided).

Thus, just like Florida, Alabama state law requires that counties *pay for medical services,* and therefore, implicit with this obligation to pay is a duty to provide medical services, because inmates are not in a position to bargain for same. *Ancata* at n.9.  The district court's conclusion that Alabama's statute places an obligation on the sheriff to provide care for inmates to the exclusion of the county is inapposite to the plain language.  This is so because under both Florida and Alabama statutes, they only specify that the county is to pay for medical care. Notwithstanding, even if the district court was correct, its ruling does not preclude the county from also being constitutionally obligated to provide medical care in that

23

this duty is not mutually exclusive or rather, under these facts, is a shared responsibility.

Thirdly, the district court ignored that under the common law Walker County voluntarily assumed a duty to provide medical care when it entered into a contract with PFHS, which, to the exclusion of the Sheriff, **only the County could enforce or cancel the contract at its sole discretion**. "The rule is well established that common law liability to third parties can arise from the negligent performance of even a voluntary undertaking. As was stated by Mr. Justice Cardozo and quoted in *Beasley* at 193: '"… It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'" (internal citations omitted). Fireman's Fund Am. Ins. Co. v. Coleman, 394 So. 2d 334, 349 (Ala. 1980).

In Keeton v. Fayette Cty., 558 So. 2d 884 (Ala. 1989), the Alabama Supreme Court found that Fayette County could be liable for physical harms that befell a juvenile inmate who had hung himself, even though there was no statutory duty to supervise inmates, because Fayette County had voluntarily assumed a duty to house juveniles, and it failed to provide extra safety precautions. "If the statute or ordinance violated was enacted or promulgated for the protection of the person claiming to have been injured by reason of the violation, the violation of the statute may be negligence per se or negligence as a matter of law. Perhaps Fayette County had no

24

duty initially to provide cells for the detention of juvenile offenders in the jail used for the confinement of adults; however, that question is not before us, for once Fayette County voluntarily undertook a duty beyond that which the law imposed, it thereafter was charged with the duty of acting with due care." (internal citations omitted). Keeton v. Fayette Cty., 558 So. 2d 884, 887 (Ala. 1989).

Similarly, even if Walker County initially did not have a duty to provide care medical care for Smothers and other inmates, pursuant to Keeton, under Alabama law, "once (Walker) County voluntarily undertook a duty beyond that which the law imposed, it thereafter was charged with the duty of acting with due care the county expressly undertook." *Id*.

Notably, the district court mistakenly cites to Williams v. Limestone Cnty. 198 F. App'x 893 (11th Cir 2006), for the proposition that Walker County's role is limited to merely providing funding, where it states, "[u]nder Alabama law, Limestone County is not responsible for assuring procedures are in place for inmates to receive medical care." [ECF. doc. 91 p. 17]. Yet, the full quote, immediately following the above statement, actually supports Smothers' position that liability can be imposed because Walker County had assumed the obligation to provide inmates with medical care. "Contrary to Williams' conclusory allegations, nothing in the record suggests. . . Limestone County voluntarily assumed the obligation to provide adequate training through its contract with Naphcare. As a result, Limestone County

25

is not a responsible party for any purported deliberate indifference to Williams' medical need." *Id.* at 895 n.2.

In the present matter, Walker County clearly voluntarily assumed the obligation to contract with PFHS to provide necessary and adequate medical care, which to the exclusion of the Sheriff, no other entity or person but the County – at its "sole discretion" could enforce or cancel the Contract. Therefore, concomitant with this obligation, Walker County assumed a duty to monitor PFHS to ensure it was compliance with the terms of contract and to take corrective action when it had knowledge inmates were dying because PFHS was withholding access to a doctor's care. Hence, because Walker County assumed the obligation but failed to act with reasonable care, *Keeton, supra.* liability can be imposed against Walker County for the injuries Mitchell Smothers suffered.

Lastly, the district court mistakenly relied on Turquitt v. Jefferson Cty., 137 F.3d 1285 (11th Cir. 1998) for proposition that Walker County has no liability for its contract provider's unconstitutional policies. [ECF. doc.# 91 at p. 16]. The *Turquitt* Court, however, never reached the issue of whether a county has a non-delegable duty, as elucidated under *Ancata*, to provide necessary and adequate **medical care** and whether it can be liable for injuries caused by its contract provider's unconstitutional policies. Instead, the sole issue before *Turquitt* was whether a county had any obligation to "supervise inmates", and more specifically

26

whether it could be liable for injuries caused by inmates fighting due to a lack of supervision. As to that issue, the *Turquitt* court ruled "that no statute authorizes counties to supervise inmates in the county jails; instead, authority over inmates is expressly delegated to Alabama sheriffs." Turquitt v. Jefferson Cty., 137 F.3d 1285, 1289 (11th Cir. 1998).

Moreso, the *Turquitt* court reasoned that no liability could be imposed on the county because it was the sheriff who had control over inmates. "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control. A local government "must have power in an area in order to be held liable for an official's acts in that area." *McMillian*, 88 F.3d at 1577. . . .In addition, a local government can only be liable under § 1983 for injuries which the government itself caused, *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036, and causation necessarily implies control." *Id.* at 1293. Notwithstanding, unlike *Turquitt,* in the present matter it was Walker County, and not the Sheriff, who had control over PFHS, and therefore, the county can be liable for injuries it caused by failing to ensure that PFHS was compliant with the contract and was providing inmates with necessary and adequate medical care.

Clearly, the present matter is readily distinguishable from *Turquitt* in that it has nothing to do, whatsoever, with injuries caused by inmates fighting due to a lack of supervision and further the county had retained control over the provision of

27

medical care to inmates. Therefore, Walker County is to be held to account for its contract medical provider's unconstitutional policies, where the County knew it was withholding necessary and adequate medical care to save money, but the county deliberately chose to look the other-way.

### B. There is substantial evidence PFHS's unconstitutional policies caused Smother's death for which Walker County is liable.

"To state a viable claim of cruel and unusual punishment due to deprivation of medical attention, there must be deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In order to prove deliberate indifference, a prisoner must show that: (1) he has a serious medical need; (2) the prison official acted with deliberate indifference to that medical need; and (3) the injury was caused by the defendant's wrongful conduct. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)." Saintfleur v. Warden, Everglades Corr. Inst., No. 17-12851-K, 2018 U.S. App. LEXIS 34575, at *8-9 (11th Cir. Dec. 7, 2018).

Thus, to survive summary judgment under § 1983, Smothers "must demonstrate (1) that [his] constitutional rights were violated; (2) that [PFHS] had a custom or policy[5] that constituted deliberate indifference to that constitutional right;

---

[5] "A policy is a decision that is officially adopted by the [governmental entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental entity]" while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117

and (3) that this policy caused the constitutional violation." (internal citations omitted). <u>Jackson v. Corizon Health</u>, No. 20-14737, 2022 U.S. App. LEXIS 3037, at *14 (11th Cir. Feb. 2, 2022).

There is no dispute, Mitchell Smothers suffered from a serious medical need when he was booked into the Walker County Jail on February 12, 2019[6] that was subjectively known by Childers and PFHS. At booking, PFHS nursing director, Mize, documented he had an infected wound to his lower left leg for which he was taking antibiotics and was receiving home health care. Further, Smothers had serious chronic health conditions of recurrent cellulitis, chronic venous insufficiency, COPD, liver disease, and the formation of non-healing wounds. Based on her judgment, Mize determined Smothers needed to be seen by a doctor and put his name on the doctor's list. Yet Childers, who was in charge of scheduling doctor's visits, and also personally knew about Smothers' poor health, disregarded Smothers' serious medical needs by failing or refusing to allow him to be seen by a doctor. Instead, Childers attempted to manage Smothers' care himself and acted outside the

---

F.3d 488, 489 (11th Cir. 1997)." <u>Ireland v. Prummell</u>, 53 F.4th 1274, 1289 (11th Cir. 2022).

[6] "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Youmans, 626 F.3d at 564 (quoting Mann, 588 F.3d at 1307). "In general, serious medical needs are those 'requiring immediate medical attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1190 (11th Cir. 1994))." <u>Gilmore v. Hodges</u>, 738 F.3d 266, 274 (11th Cir. 2013).

scope of practice as a nurse by diagnosing, treating, and illegally administering prescriptions medications – without a doctor's order, for Smothers acute and chronic serious health conditions. And further, with death looming, Childers attempted to transfer Smothers to a DOC facility to avoid liability.

Because Smothers was unable to see a doctor, his health declined. He developed sepsis secondary to cellulitis, and within a manner of days of being admitted to the hospital, Mitchell Smothers died from multisystem organ failure caused by the lack of medical care he received at the jail.

Similarly, there is substantial evidence PFHS had a policy of depriving inmates' access to necessary and adequate medical care, to Walker County, and itself, money, which caused Smothers' constitutional right to be violated.

Roger Childers is the final policymaker for PFHS. "[A] government employee is a final policymaker "only if his decisions have legal effect without further action by the governing body"—in this case, the Board—"and if the governing body lacks the power to reverse the member or employee's decision." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) (internal quotation marks and citations omitted)." S. Atl. Cos., Ltd. Liab. Co. v. Sch. Bd. of Orange Cty., 699 F. App'x 842, 846 (11th Cir. 2017). He is the sole owner and president of PFHS. He was also the responsible health authority who acted on behalf of PFHS to ensure it met its obligations under the contract with Walker County. Childers was

responsible for monitoring inmate access to medical care, maintaining the doctor's list, and for making sure inmates were scheduled and seen by a doctor.

Yet, the cost to be seen by a doctor was incurred either by PFHS, if inmates were seen at the jail, or by Walker County, if the inmates were taken to the hospital. Thus, by Childers denying inmates access to be seen by a physician for their serious medical needs, the less money PFHS and the County had to expend, and the more money they saved.

To save the County and his company money, Childers, as the final policymaker for PFHS, determined that he could medically diagnose and treat Smothers serious medical conditions himself, and for months, he failed or refused to allow Smothers to be treated by a doctor, even though he had been placed on the doctor's list by nursing director, Mize. The impact of this policy decision not only deprived Smothers of his constitutional rights but ultimately caused his untimely death.

PFHS widespread practices also deprived Smothers of his constitutional rights to medical care in other ways. PFHS has a widespread practice of allowing its nurses to order prescribed medication under Dr. Khan's name and DEA number, even though Dr. Khan had never seen, evaluated, diagnosed, treated, or prescribed the medication. In accordance with this practice, PFHS staff (registered nurses) acted outside the scope of practice, medically diagnosed, and treated Smothers with Lasix

to manage the swelling and open sores in his legs, without the benefit of ever having been seen by a doctor.  In the absence of a doctor's oversight, an inadequate dose of Lasix was administered, which negatively impacted Mitchell Smothers' health.

Additionally, PFHS has a widespread practice of providing wound care without following a medically approved standardized written procedure or following a doctor's instructions. In the absence of a medically authorized procedure, PFHS staff changed Smothers' bandages to his open wounds on his MRSA infected lower left leg, and discontinued the dressing changes and antibiotics, without a doctor's order.

Thus, PFHS's unconstitutional policies and practices of depriving inmate access to necessary and adequate wound care, to save the County money, resulted in Smothers receiving inadequate medical care for his cellulitis which progressed to sepsis and caused his death.  Therefore, Walker County cannot escape liability under §1983.

**2.     The district court erred finding the plaintiff failed to present substantial evidence that Walker County has a *defacto* unconstitutional policy of depriving inmates' access to medical care to save money, which caused the constitutional deprivations that led to Mr. Smothers' death.**

Without waiving the above and foregoing, §1983 liability against Walker County can also arise from county's own customs, practices, and policies that led to the unconstitutional deprivations suffered by Mitchell Smothers.

"In *Gilmere v. City of Atlanta*, 737 F.2d 894 (11th Cir.1984), this court explained that a municipality may be liable under 42 U.S.C. § 1983 (1982) if unconstitutional action is taken to implement or execute a policy statement, ordinance, regulation or officially adopted and promulgated decision. *Gilmere* at 901. Liability may also attach where the unconstitutional deprivation is "visited pursuant to government 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Gilmere* at 901 (quoting *Monell v. Department of Social Services*, 436 U.S. 658, at 690-91, 98 S. Ct. 2018 at 2035-36, 56 L. Ed. 2d 611, *rev'g in part Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)). However, the "official policy or custom must be the moving force of the constitutional violation" before civil liability will attach under § 1983. *Gilmere*, 737 F.2d at 901 (*quoting Polk County v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981))." Trezevant v. Tampa, 741 F.2d 336, 340 (11th Cir. 1984).

"A county is liable under [section] 1983 if one of its customs, practices, or policies was the moving force behind a constitutional injury." *Grochowski v. Clayton Cnty.*, 961 F.3d 1311, 1321 (11th Cir. 2020) (internal quotation marks omitted). "[A] plaintiff must show: (1) that his constitutional rights were violated; (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the

violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A plaintiff has two methods by which to establish a [county's] policy: identify either (1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the [county]." *Walker v. City of Calhoun*, 901 F.3d 1245, 1255 (11th Cir. 2018) (alterations adopted)." Greenway v. S. Health Partners, Inc., 827 F. App'x 952, 961-62 (11th Cir. 2020).

As demonstrated below, there is substantial evidence Walker County's policy to continue to contract with PFHS to save money was with deliberate indifference to Smothers constitutional rights, which caused Mitchell Smothers to be deprived of his right to have access to necessary and adequate medical care.

From 2009 to 2021, Walker County purposefully selected and exclusively contracted with PFHS to save money on inmate medical expenses. Walker County set out in the contract the duties that PFHS was to perform and specified that its nurses, (i.e. Childers), would determine whether inmates were allowed to be seen by a doctor, whether at the jail or a hospital. To further minimize its costs, the contract expressly required that, at no additional cost to the County, PFHS would perform wound care services and that PFHS would pay for doctor's visits at the jail. Further, to the exclusion of the Sheriff, only the County could cancel or enforce the contract, if in its "sole discretion" the County decided that PFHS was not in compliance.

In July of 2016, Walker County was aware PFHS was not in compliance with the terms of the contract by not having a doctor or nurse practitioner conduct a health clinic once per week.  Despite the non-compliant condition, the County looked the other way and, in an effort to mitigate cost, renewed the contract with PFHS and kept PFHS at the jail until 2021. In the four years preceding Sheriff Smith taking Office, there had been nine (9) deaths at the jail due to a lack of adequate medical care by Childers and PFHS.  The County was aware of these deaths through prior inmate lawsuits.  Despite knowing of the deaths and the complaints of inadequate care, the County did nothing to enforce or cancel the contract with PFHS.

In 2019, when Sheriff Smith took office, he was fully aware of the inadequate care being provided to the incarcerated inmates at the jail he was assuming responsibility over, and the numerous deaths resulting therefrom.  He discussed his concerns with County Commissioner Chairman Jerry Bishop that inmates were not being allowed to be seen by a doctor – doctors were not coming to the jail, and that PFHS was staffing the jail with CNA's as opposed to registered nurses. When Sheriff Smith asked Chairman Bishop to cancel the contract and solicit bids to hire a new medical provider, he was told that since it was his election cycle it would have to wait until after the election.

Despite knowing that inmates were dying because PFHS was depriving inmates' access to medical care and the right to see a doctor for their serious medical

conditions, the County chose not to solicit bids or change providers until it became politically expedient some two years later.

In the meantime, because the County refused to take action and get rid of Childers and Sheriff Smith had no authority to hire a new provider on his own, Sheriff Smith adopted a policy directing Childers to notify him of any and all sick inmates in the jail, so that he could make sure they were sent to the hospital and treated by a real doctor, and he also directed his jailers that any inmate that was sick, or even stubbed their toe, was to be sent directly to the hospital so that they could be seen by a real doctor, instead of being treated by PFHS and Childers.

Notwithstanding, the county's contractor, PFHS and Childers, failed to abide by Sheriff's Smith's policy and inform Smith that Mitchell Smothers was in his jail sick and needing to see a doctor. Instead, Childers kept this fact hidden while illegally writing prescriptions and treating Smothers' illness in the jail, unbeknownst to the sheriff and without a doctor's assistance, in furtherance of his scheme and efforts to keep cost down, despite readily acknowledging that Smother's needed to be treated by a doctor.

Sheriff Smith's policy change nearly doubled the cost to the County. In response to the growing expenses, the County attempted to discourage the Sheriff by threatening him that if he continued in this practice, they would make cuts to other areas of his budget.

Therefore, despite having subjective knowledge its contract medical provider PFHS was depriving inmates access to medical care, specifically of their right to be seen and treated by a doctor for their serious medical needs that was causing needless deaths at the jail, the County was deliberately indifferent when it decided to renew the contract with PFHS in 2016, and it did nothing to enforce or cancel the contract, and it chose to leave the contract in place and not undertake any substantive efforts to change providers until 2021, because PFHS was saving the County money.

Because of the County's *defacto* policy or custom to save money, it continued to contract with a substandard provider, PFHS, which caused Smothers to be deprived of his constitutional rights to receive necessary and adequate medical treatment from February 12th through August 2, 2019, and resulted in his untimely death. Thus, the County cannot escape liability for its own unconstitutional policies under §1983.

While at the summary judgment stage a district court is precluded from weighing and considering the evidence and drawing inferences in favor of the movant, Walker County, the district court did just the opposite. [ECF. doc. #13-15]. Indeed, rather than to allow disputed facts to go to a jury[7] the district court instead discounted Smothers' facts, and it concluded that "beyond pointing to the fact that

---

[7] "That, however, at most shows that Jebian's contention of ineffective communication is disputed by Defendants—but a disputed material fact goes to a jury." Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 839 (11th Cir. 2017).

PFHS was one of the lowest cost bidders to provide medical care, Plaintiff has not presented any Rule 56 evidence to show Walker County's policy was to prioritize savings over selecting an adequate medical care provider," because "Walker County did not make any cuts to [the Sheriff's] budget, nor did they direct him to end his policy, . . .and Walker County never refused to pay any outside medical bill." [*Id.* at 14].

"[T]he correct procedure is for the district court to determine if the moving party has met its initial burden of demonstrating the absence of any disputes of material fact and its entitlement to judgment as a matter of law." Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997). "The standard of review of a district court's grant of summary judgment is plenary. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). We draw all justifiable inferences from the evidence in favor of the nonmoving party, and if a genuine dispute over a material fact exists, summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255, 106 S. Ct. 2505, 2510, 2513-14, 91 L. Ed. 2d 202 (1986)." Kendrick v. Jefferson Cty. Bd. of Educ., 932 F.2d 910, 912 (11th Cir. 1991).

Since the plaintiff has presented substantial evidence that a reasonable juror could conclude Walker County had a policy of knowingly contracting with a substandard medical provider to reap the financial benefit of mitigating its costs,

which resulted in Mitchell Smothers injury, the district court exceeded its discretion by not allowing these facts to go to the jury when it granted Walker County summary judgment.

## CONCLUSION

When viewing the evidence in the light most favorable to the plaintiff, defendant has failed to make a prima facia showing it is entitled to summary judgment and the judgment of the district court is due to be reversed.

Respectfully Submitted,

/s/ *Charles C. Tatum, Jr.* (ASB-1703-T77C)
ctatum@aol.com
*/s/Seth L. Diamond* (ASB-4102-H54D)
sediamondlaw@gmail.com
Attorneys for Pamela Smothers
Charles C. Tatum, Jr. P.C.
Post Office Box 349
Jasper, Alabama 35502
Phone:  (205) 387-0708

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of FRAP 32(a)(7) because, excluding the parts of the document exempted by FRAP 32(f) this document contains 9,720 words.  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

*//s//  Seth L. Diamond, Esquire* _____
Of Counsel

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2024, I served a copy of the above and foregoing Principal Brief of Appellant on all attorneys of record by email transmission and by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to the registered users herein listed below:

James Randall McNeill
Jamie Helen Kidd Frawley
Fred Clements, Jr.
Webb McNeill Walker PC
P.O. Box 238
Montgomery, Alabama 36101-0238
<u>rmcneill@wmwfirm.com</u>
<u>jfrawley@wmwfirm.com</u>
<u>fclements@wmwfirm.com</u>

By: <u>*s/Seth L. Diamond*</u> (ASB-4102-H54D)
Seth L. Diamond