Appellate Case No. 24-13131
UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

Pamela Smothers, as Administrator for the Estate of Mitchell Wayne Smothers, Jr, deceased.

Plaintiff/Appellant,

v.

Walker County, Alabama

Defendant/Appellee.

On Appeal from the United States District Court for the
Northern District of Alabama, Jasper Division
The Honorable R. David Proctor

6:21-cv-01057-RDP

Reply Brief of Plaintiff/Appellant, Pamela Smothers

Charles C. Tatum, Jr., Esquire
Seth L. Diamond, Esquire
Attorneys for Pamela Smothers
Post Office Box 349
Jasper, Alabama 35502
Telephone: (205) 387-0708
Facsimile: (205)-265-2920
ctatum7@aol.com
sediamondlaw@gmail.com

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel for Plaintiff/Appellant Pamela Smothers ("Ms. Smothers") certifies to the best of his knowledge that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have or may have an interest in the outcome of this case, including any publicly held company that owns 10% or more of a party's stock, to the best of my knowledge:

1. Walker County, Alabama – defendant.

2. Fred Clements, Jr – defendant's counsel.

3. Seth L. Diamond – plaintiff's counsel.

4. Jamie Helen Kidd Frawley – defendant's counsel.

5. J. Randall McNeill - defendant's counsel.

6. R. David Proctor – trial judge.

7. Pamela Smothers – plaintiff.

8. Charles C. Tatum Jr - plaintiff's counsel.

9. Charles C. Tatum Jr, PC – plaintiff's counsel's firm.

10. Webb, McNeill, Walker PC – defendant's counsel's firm.

                                   By: *s/Charles C. Tatum, Jr.* (ASB-1703-T77C)
                                   Charles C. Tatum, Jr, Esquire
                                   Attorney for Pamela Smothers

# **TABLE OF CONTENTS**

**Page #**

CERTIFICATE OF INTERESTED PERSONS……………………………......i

TABLE OF CONTENTS…………..…………………………………………...ii

TABLE OF CITATIONS……………………………………………………….iii

     I.    Cases……………………………………………………..……..iii

     II.   Statutes..……………………………………………………….....iv

ARGUMENT………………………………………………………………....1

**1**.    **Walker County makes no argument in rebuttal that it** *did not voluntarily assume a duty* **to provide inmate medical care and therefore has tacitly admitted the same.**……………………………………………………………………...1

**2.    As a matter of state law, Alabama has expressly imbued counties with the authority to provide inmate medical care.**……………………………………....6

**3.    The 11th Circuit has never ruled that its decision in** *Ancata* **was limited to Florida.**……………………………………………………………………….8

CONCLUSION……………………………………...…………………………14

CERTIFICATE OF COMPLIANCE…………………………………………..14

CERTIFICATE OF SERVICE…………………………………………………...15

# **TABLE OF CITATIONS**

*Cases*                                                                                          *Page #*

Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985) _____ 8,11

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) _____ 13

Benton v. Walker Cnty., No. 6:17-cv-00384-JHE, 2020 U.S. Dist. LEXIS 50256

  (N.D. Ala. Mar. 24, 2020), (Appellee Br. doc. # 15 at pp. 23-25) _____ 9

Fireman's Fund Am. Ins. Co. v. Coleman, 394 So. 2d 334, 349 (Ala. 1980) \_\_\_\_\_ 1

Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012) 2

Johnson v. Walker Cnty., No. 6:14-cv-02257-LSC, 2015 U.S. Dist. LEXIS 32487

  (N.D. Ala. Mar. 17, 2015),_____9

Jones v. Bank of Am., N.A., 564 F. App'x 432 (11th Cir. 2014) _____ 2

Keeton v. Fayette Cty., 558 So. 2d 884, 887 (Ala. 1989) _____ 1

Kister v. Quality Corr. Health Care, No. 5:16-cv-01406-KOB-HNJ, 2018 U.S.

  Dist. LEXIS 170509 (N.D. Ala. Oct. 3, 2018)_____ 10

Parker v. Williams, 862 F.2d 1471, 1479 (11th Cir. 1989)_____ 8

Sheppard v. O'Malley, No. 24-CV-61481-SINGHAL/STRAUSS, 2024 U.S. Dist.

   LEXIS 219522, at *4 (S.D. Fla. Nov. 12, 2024) _____3

Storm Damage Sols., LLC v. RLI Ins. Co., No. 23-CV-23681-

   SCOLA/GOODMAN, 2023 U.S. Dist. LEXIS 206286, at *13 n.8 (S.D. Fla. Nov.

   17, 2023) _____4

Turquitt v. Jefferson Cnty., 137 F.3d 1285, 1292 (11th Cir. 1998)_____ 13

Turquitt v. Jefferson Cty., 137 F.3d 1285 (11th Cir. 1998)_____8

Waldron v. Spicher, 954 F.3d 1297, 1304 (11th Cir. 2020) _____3

Williams v. Limestone Cnty. 198 F. App'x 893 (11th Cir 2006)_____1

*Statutes*

Ala. Code § 14-6-20 _____ 6,11

Alabama Code §14-6-19_____10

Fla. Stat. Ann. §951.23(4)(b)(6) _____11

Florida's Statute § 951.032_____10

# ARGUMENT

**1.    Walker County makes no argument in rebuttal that it *did not voluntarily assume a duty* to provide inmate medical care and therefore has tacitly admitted the same.**

In her principal brief Mrs. Smothers argued, just as she did to the district court, that as a basis for liability Walker County had voluntarily assumed a duty to provide medical care by having entered into a contract with its chosen medical provider, PFHS, and under the express terms of the contract, **only the County, at its sole discretion, could enforce or cancel the contract, provided that the County give PFHS 60 days advance written notice of the non-complaint condition and an opportunity to correct it.** (ECF doc. #70-1 at p. 95 ¶10).  As such, to the exclusion of the Sheriff (or anyone else), the onus was on Walker County to monitor PFHS to ensure it was compliant with the terms of the contract in its provision of inmate medical care and, further, to take remedial measures when PFHS fell short. Thus, the provision of inmate medical care was nothing less than a shared responsibility between the County and the Sheriff, where the County placed itself in a supervisory role over its contract provider, PFHS.

Under Alabama common law, the County had a duty to act with due care in the obligations in which it undertook. *See* Fireman's Fund Am. Ins. Co. v. Coleman, 394 So. 2d 334, 349 (Ala. 1980); Keeton v. Fayette Cty., 558 So. 2d 884, 887 (Ala. 1989), and Williams v. Limestone Cnty. 198 F. App'x 893 (11th Cir 2006).  Yet,

1

despite being clearly on notice that inmates were dying because PFHS was purposefully depriving inmates' access to necessary and adequate medical care to save itself and the County money, the County failed to fulfill its legal and contractual duty to remove PFHS and Roger Childers from the jail. The County was deliberately indifferent when it chose to turn a blind-eye and do nothing until it was politically expedient to change medical providers, which was well-after Mitchell Smother's death.

Notwithstanding, in its responsive brief Walker County completely fails to address or refute Mrs. Smothers' assertions, and therefore significantly, it has tacitly conceded the issue. "[A]n appellee's failure to raise an affirmative defense on appeal "waives any right to claim such a defense. Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012). "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004)." Jones v. Bank of Am., N.A., 564 F. App'x 432 (11th Cir. 2014). *see also Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2023 U.S. Dist. LEXIS 43759, 2023 WL 2524530, at *3 (S.D. Fla. Mar. 15, 2023) ("A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness."); *Guzman v. City of Hialeah*, No. 15-23985-CIV, 2016 U.S. Dist. LEXIS 91613, 2016 WL 3763055,

at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point.")." Sheppard v. O'Malley, No. 24-CV-61481-SINGHAL/STRAUSS, 2024 U.S. Dist. LEXIS 219522, at *4 (S.D. Fla. Nov. 12, 2024).

Rather than address the merits of Mrs. Smothers' argument, the County, for the first time on appeal, makes a skeletal argument attacking the sufficiency of Mrs. Smothers amended complaint, alleging that she did not properly raise her basis for imposing liability against the County. (Appellee Br. ECF doc. 15 at pp. 26-27). The County's argument, however, is unavailing for several reasons.

Firstly, absent special circumstances, this court will not hear arguments that are being raised for the first time while on appeal. "Arguments raised for the first time on appeal are not properly before this Court." *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000). But our "power to entertain an argument raised for the first time on appeal is not a jurisdictional one; thus we *may* choose to hear the argument under special circumstances." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (citing *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 (11th Cir. 1984)) (emphasis in original). "Waldron v. Spicher, 954 F.3d 1297, 1304 (11th Cir. 2020). Since Walker County did not raise this argument to the trial court and it has readily failed to demonstrate any special

3

circumstances why this court should even entertain it, then this court should disregard the same.

Secondly, it is beyond cavil this court will not consider conclusory and skeletal arguments. "To properly raise an argument, a litigant must support the argument with factual and legal authority. *See Singh v. United States AG*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")." Storm Damage Sols., LLC v. RLI Ins. Co., No. 23-CV-23681-SCOLA/GOODMAN, 2023 U.S. Dist. LEXIS 206286, at *13 n.8 (S.D. Fla. Nov. 17, 2023).

Notably, Walker County has failed to develop its argument and explain exactly how Mrs. Smothers' amended complaint was factually or legally insufficient. This is especially problematic for Walker County because the district court had previously denied the County's motion to dismiss plaintiff's amended complaint, (ECF doc. #23 p. 1), and it found there was a probable basis for imposing liability, after having considered the same reasons as being raised by Smothers on appeal. (ECF doc. #17 pp. 6-10). Yet, Walker County leaves it to the court to do its

4

own work, and thus there is no reason for this court to give its newly raised and skeletal argument any credence.

Lastly, Walker County's contention that Mrs. Smothers did not properly raise her basis for imposing liability is belied by the plain language of the complaint, where she clearly places the County on notice of its basis for liability as follows:

"122. Walker County has a duty to pay for medical care provided to inmates.

123. To minimize costs, Walker County purposefully entered into or continued a contract with Preemptive Forensic Solutions LLC because it was the least expensive provider of medical services to jail inmates.

124. Walker County had subjective knowledge that the care being provided to inmates by Preemptive was substandard, that its owner/manager Childers was practicing outside his scope of practice as a registered nurse, was not fulfilling the terms of the contract, and was depriving inmates of necessary medical treatment for their serious medical needs from other inmate complaints, prior legal actions, insurance audits, complaints, conversations with the Sheriff and in various other ways, which had caused needless suffering and death.

125. Despite Walker County knowing Childers/Preemptive were depriving inmates of necessary medical care for their serious medical needs, Walker County renewed or continued Preemptive's contract to avoid having to pay more money for inmate medical care.

126. Walker County was deliberately indifferent to inmates' need for health care and acted in an objectively unreasonable manner by prioritizing expenses over care and failed to contract with another provider who would not deprive inmates of necessary medical care.

127. As a matter of custom and practice, Walker County hired Childers to provide inmate medical cares despite knowing that he was failing to provide necessary medical care for inmates in the jail, and thus has habitually placed its desire to minimize inmate medical cost, over its duty to provide funds necessary to provide inmates constitutionally mandated medical care. . . .". (ECF doc. #3 pp. 29-31).

Clearly, Walker County cannot in good faith argue Mrs. Smothers failed to raise sufficient factual and legal grounds for imposing liability and this court should not be persuaded by the County's dubious assertion to the contrary.

**2.    As a matter of state law, Alabama has expressly imbued counties with the authority to provide inmate medical care.**

Walker County spills a lot ink to impress upon this court, albeit wrongfully, that the Alabama Legislature has constrained its duties to only providing funding with respect to its jail. (Appellee Br. ECF doc. 15 at pp. 19-24). Notwithstanding, the County's argument is belied by *Ala. Code § 14-6-20*, which provides in pertinent part as follows: "(a) The county commission in each county in this state may elect a physician, or as many physicians as in its discretion may be necessary, to attend

6

the inmates of the jails in such counties . . .(b) The county commission shall fix and determine the term or terms of such physician or physicians, . . , and such physicians may be removed at the will of the county commission. The county commission . . . *shall determine what duties such physician shall perform.*" (Emphasis added).

Although Walker County has completely failed to even address this statute, it is clear from the above plain language that the Alabama Legislature has indeed afforded counties with the right to hire medical providers to attend to the medical needs of its inmates. And, if it does so, the statute imposes the obligation upon the county to determine what duties its medical provider shall perform, and additionally, it gives the County the right to terminate its provider without any involvement from the Sheriff.[1]

Clearly, the Alabama Legislature has broadened a county's authority and its duties beyond merely funding its jails, as so ardently argued by defendant. Moreso, Walker County has failed to cite any legal authority that precludes a county from undertaking the additional duty of monitoring and controlling the performance of its medical provider, as Walker County has done so in this instance, by making itself

---

[1] This statutory endowment of authority expresses what *Ancata* held was implied - "implicit with the duty to pay for medical services is the duty to provide" them.

7

the only party, to the exclusion of the Sheriff and at its sole discretion and upon giving proper notice, who could enforce or cancel the contract.

Thus, there is no merit to defendant's argument that the Alabama Legislature has limited its duty to only funding the jail and this court should disregard the same.

**3.    The 11th Circuit has never ruled that its decision in *Ancata* was limited to Florida.**

Walker County contends, as the argument goes, that this court's decision in Turquitt v. Jefferson Cty., 137 F.3d 1285 (11th Cir. 1998), overruled Parker v. Williams, 862 F.2d 1471, 1479 (11th Cir. 1989), which *should be interpreted to mean* that Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985) has no application in Alabama. Yet, this is a distorted legal theory premised on the defendant's own musings.

Indeed, even though *Ancata* clearly preceded *Turquitt,* the Court in *Turquitt* never addressed the application of *Ancata* relative to the County's role in the delivery of inmate medical care. Notably, the *Turquitt* Court never reached the issues raised in this appeal, whether a county in Alabama has a non-delegable duty to provide necessary and adequate medical care and can be liable for injuries caused by its contract provider's unconstitutional policies. Instead, the issue in *Turquitt* was whether a county had any obligation to "supervise inmates", and more specifically, whether a county could be held liable for injuries caused by inmates fighting arguably due to a lack of supervision. *Id.* at 1289. To this limited issue, in reasoning

8

the County was not liable, the *Turquitt* Court merely reflected that its decision in *Parker* was overruled to the extent it "held that Alabama sheriffs in their daily operation of county jails act as policymakers for the county." *Id.* at 1291. Hence, *Turquitt* is clearly distinguishable on its facts, and it never reached the issues raised in this appeal.

Furthermore, Walker County has failed to cite any decision from the 11th Circuit Court where it has either actually addressed the application of *Ancata* in Alabama or held it to be inapt. Rather, the County relies on a handful of northern district decisions that were never reviewed by this Court.

Particularly, Walker County seemingly places great emphasis on Judge Coogler's decisions from the Northern District of Alabama in Benton v. Walker Cnty., No. 6:17-cv-00384-JHE, 2020 U.S. Dist. LEXIS 50256 (N.D. Ala. Mar. 24, 2020), (Appellee Br. doc. # 15 at pp. 23-25), and Johnson v. Walker Cnty., No. 6:14-cv-02257-LSC, 2015 U.S. Dist. LEXIS 32487 (N.D. Ala. Mar. 17, 2015), (Appellee Br. doc. # 15 at pp. 34-35). However, in neither of these cases does Judge Coogler find that the 11th Circuit's ruling in *Ancata* is inapplicable in Alabama.

Moreover, inapposite to the County's contention, in *Johnson* the district court actually held that *Ancata* was applicable, "Johnson correctly points out that the County has a non-delegable duty to provide for indigent prisoners' medical treatment, *Ancata v. Prison Health Svcs., Inc*., 769 F.2d 700, 705 (11th Cir. 1985).

9

*Id.* at *7. Further, in neither case does the district court reach the issues raised in the instant matter that Walker County had assumed a duty to oversee the delivery of inmate medical care and is liable for the harms caused by its contract provider's polices.

For the same reasons, the County's reliance on Kister v. Quality Corr. Health Care, No. 5:16-cv-01406-KOB-HNJ, 2018 U.S. Dist. LEXIS 170509 (N.D. Ala. Oct. 3, 2018) is equally unavailing. In that case the northern district similarly did not address the issues raised in this matter or analyze whether under its contract Morgan County had retained control over its contract medical provider and voluntarily assumed a duty to oversee the delivery of inmate medical care.

Additionally, in its brief, Walker County has failed to meaningfully explain how Florida law is so different from Alabama, with respect to the provision of inmate health care, to persuade this court to rule in its favor. To this point, Walker County does not refute Mrs. Smothers' argument that Florida's Statute § 951.032, which was the only Florida statute referenced by the *Ancata* Court, is substantially similar to Alabama Code §14-6-19, in that both statutes merely obligate the county to pay for inmate medical expenses.

In reliance on this statute, however, the *Ancata* Court ruled that implicit with county's obligation to pay for medical care was a duty to provide medical services

10

because a prisoner is not in a position to bargain for services in jail. "Although the statute [§ 951.032] makes clear that the county can seek reimbursement from a person incarcerated, the plain wording of the statute indicates that the county has the responsibility for securing adequate medical treatment. A prisoner does not have to bargain for medical care. The county admits as much in its brief; "state law mandates that Broward County pay the medical expenses of prisoners incarcerated in the county jail." *Ancata* at n 7. And thus is liable for the unconstitutional harms caused by its medical provider's policies. "[T]he county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985).

Instead, to demonstrate the disparity of Florida State Law from that of Alabama's, Walker County asks this Court to consider Fla. Stat. Ann. §951.23(4)(b)(6), even though this statute was not relied upon by the Court in *Ancata*. (Appellee Br. ECF doc. 15 at pp. 30-31). But the County does not fare any better with this one, either.

Indeed, the County's argument is belied by the fact that there is no meaningful difference between its newly cited Florida law and Ala. Code § 14-6-20 in that **both statutes** authorize county governments to furnish inmates with medical care. (*See* Fla. Stat. Ann. §951.23(4)(b)(6)*, "*Each sheriff, county, city, or other

11

entity that operates a municipal detention facility or a county detention facility shall adopt, at a minimum, the Florida Model Jail Standards approved by the working group with reference to all of the following: . . . 6. The furnishing of medical attention and health and comfort items to county and municipal prisoners.").

Furthermore, as noted above, Ala. Code § 14-6-20 creates a shared duty regarding the provision of inmate medical services in that it imposes a duty on the county to determine what services the provider will perform, and it grants the county the right to terminate the provider – without the Sheriff's approval, and by implication, if not expressly, imposes a duty on the county to oversee the provider's delivery of care: *Ala. Code § 14-6-20*, which provides in pertinent part as follows: "(a) The county commission in each county in this state may **elect a physician**, or as many physicians **as in its discretion may be necessary**, to attend the inmates of the jails in such counties . . .(b) The county commission shall **fix and determine the term or terms** of such physician or physicians, . . . , and such physicians **may be removed at the will of the county commission**. The county commission . . . *shall determine what duties such physician shall perform*.". (**emphasis added**.)

Even more compelling, the County does not dispute it retained control over its contract provider PFHS relative to the delivery of inmate medical services, as argued by Mrs. Smothers. In fact, Walker County and PFHS were so closely allied that the County arguably foresaw its potential liability and had an indemnification

12

clause inserted into the contract specifying that PFHS would indemnify and hold the County harmless for any loss it suffered arising out of any act or omission committed by PFHS, its agents, and employees. (ECF doc. #70-1 at p. 25 and at pp. 94-95 at ¶9).

As this Court noted in *Turquitt*, "[a] local government "must have power in an area in order to be held liable for an official's acts in that area." *McMillian,* 88 F.3d at 1577. . . . In addition, a local government can only be liable under § 1983 for injuries which the government itself caused, *Monell,* 436 U.S. at 691, 98 S. Ct. at 2036, and causation necessarily implies control." Turquitt v. Jefferson Cnty., 137 F.3d 1285, 1292 (11th Cir. 1998). Thus in absence of any dispute on this issue, Walker County has tacitly conceded the point that it had control over PFHS in its delivery of inmate medical care and is therefore liable for the injuries caused by its contract provider's unconstitutional policies.

Although Walker County makes a fanciful argument that this Court's ruling in *Ancata,* interpreting Broward County's legal duty, was somehow "abrogated" by the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) and should be disregarded in the instant matter, (Appellee Br. ECF doc. 15 at pp. 23-24), the County clearly fails to cite any legal authority which supports this proposition, and it appears to be based on nothing more than its own wishful thinking. As such no response is warranted by the appellant.

Thus, because Walker County has failed to make any viable argument that this Court's decision in *Ancata,* that County governments have a non-delegable duty to provide inmate medical care and are liable for the unconstitutional policies of its contract medical provider is inapplicable in Alabama, this court should disregard the same and rule in favor of the appellant, Mrs. Smothers.

## CONCLUSION

When viewing the evidence in the light most favorable to the plaintiff, defendant has failed to make a prima facia showing it is entitled to summary judgment and the judgment of the district court is due to be reversed.

Respectfully Submitted,

/s/ *Charles C. Tatum, Jr.* (ASB-1703-T77C)
ctatum@aol.com
*/s/Seth L. Diamond* (ASB-4102-H54D)
sediamondlaw@gmail.com
Attorneys for Pamela Smothers
Charles C. Tatum, Jr. P.C.
Post Office Box 349
Jasper, Alabama 35502
Phone: (205) 387-0708

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of FRAP 32(a)(7) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 3,325 words. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

*//s// Seth L. Diamond, Esquire*_____
Of Counsel

# CERTIFICATE OF SERVICE

     I hereby certify that on December 25, 2024, I served a copy of the above and foregoing Principal Brief of Appellant on all attorneys of record by email transmission and by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to the registered users herein listed below:

James Randall McNeill
Jamie Helen Kidd Frawley
Fred Clements, Jr.
Webb McNeill Walker PC
P.O. Box 238
Montgomery, Alabama 36101-0238
rmcneill@wmwfirm.com
jfrawley@wmwfirm.com
fclements@wmwfirm.com

                                                By: *s/Seth L. Diamond* (ASB-4102-H54D)
                                                     Seth L. Diamond